Jacob Phillips is here for Affordable Bio Feedstock, along with Peter Loewy, and Matthew Steven Johnshoy is here for the United States. Good morning. Mr. Phillips, you may begin when you're ready. Thank you, May. Please support. My name is Jacob Phillips. As you said, I'm here with my co-counsel, Mr. Lowery, and we represent the plaintiffs in appellants in this case. We really have two pretty simple arguments that we're making today. The first is that there are at least some circumstances in which equitable principles can be applied to prevent the IRS from attempting to claw back or to secure payments that have already been disbursed years prior in the future. There's at least some circumstances. Isn't the problem with that, though, that the money has already been paid back to the U.S. and is returned to the government, but we're in a very different posture? I think you have to address that posture. Okay, so we agree that that's a threshold issue, right? Whether the returning of the payments under protest to avoid the accumulation of interest, does that then mean that we're affirmatively seeking payment as opposed to seeking to retain payment? I understand the question, and I understand philosophically that that's the threshold issue. We would submit that functionally what this is, practically what this is, is money was provided to the plaintiffs. Three years later, the IRS tried to assess it. We think we should be able to retain it. And so that that's functionally what this is. And to conceive of the returning under protest just to avoid penalties and accumulation of interest and all of that as then meaning we're now affirmatively seeking a payment that hasn't yet been made, we would submit it's just to elevate form over function and that the court should conceive of this case as it is in practice and in reality, which is the money was given to the plaintiffs. They had it for three years, and now the IRS wants it back, and the plaintiffs want to keep it. And to sort of, so we would submit that. I understand, you know, theoretically it can be conceived of the other way, but as we said, that would be to elevate form over function. Of course, you pretty much concede that you're not entitled to the money. We, there was a stipulation that in 2015, that the plaintiffs are not contending that in 2015, they qualified under the IRS's interpretation of the statute for the money. That's not an issue that we're not seeking to prove. And it's public money. And so you want us to publish opinion that says if you get public money that you're not entitled to keep because the government made a mistake, you get to keep the money. No, Your Honor. We would, we're seeking an opinion that says that there is at least some circumstances in which that could be the case. The district court has not yet reached that issue because he conceived of Richmond as absolutely foreclosing it under any circumstance. And what we're submitting is that there is at least some circumstances, and thus the case should be remanded for the district court to. And it would be what circumstance? I'm sorry? In what circumstance would that be? Well, we would. So you get to keep the money? Well, for example, one example we gave is, and this isn't that case, we're not suggesting that, but deliberately misleading. If the IRS deliberately misled someone, gave them money. Which we don't have here. I'm sorry? We don't have that here. But the district court's opinion would require that, right? So what the district court held and what the government is arguing is that the appropriation clause always forecloses anyone from retaining money, even if they were at no faults, even if they had nothing to do with it, that the appropriation clause forecloses that. See, I read Richmond as an across-the-board prohibition on the court issuing estoppel judgments for monetary remedies against the government. You don't read Richmond that way? I read Richmond as saying that if payments have not yet been made, you cannot go and say, hey, this employee of the Navy, whatever, said I was entitled to this, so you have to pay me in perpetuity, this disability annuity, and to judge over interest. So we read Richmond differently. You and I read it differently. How did you say you read Richmond? It's an across-the-board prohibition on any estoppel judgments entered by a court for monetary remedies against the government because of the appropriations clause. That's how I read it. You don't read it that way. I don't read it that way, and I don't read the appropriations clause that way, right? I read the appropriations clause. The appropriations clause says that no money shall be drawn from the treasury except it's been appropriated by law. It is silence on what happens if that money is dispersed, and then years later, the IRS realizes it was a mistake. What if it was 30 years? What if it was 50 years later? Take the appropriations clause out of the occasion, then. You don't read Richmond as an across-the-board prohibition on the court issuing estoppel judgments for monetary remedies against the government? Not if that money has already been dispersed. I read it as . . . If the government makes a mistake, and you get money that you're not entitled to have, you get to keep it. In some circumstances, sure. Like, if the deliberately misleading circumstance that it . . . Which we don't have here. We don't have that here, but that's what the government is seeking. That's what the district court held. What if it was 50 years later? You get to keep it then. What if that money is long, long gone? An example we gave was the . . . Does the government have the authority to conduct an audit? Absolutely. What's the purpose for the audit? If you can't claw back money that you're not entitled to receive, what's the purpose for the audit to begin with? Typically, an audit is to find out whether it's not about . . . This is a credit, right? Typically, audits are, did this person pay enough in taxes, or are they evading tax laws, or is there fraud, or tax evasion, or what have you? This is different, right, because it's a tax credit. You have to get pre-clearance, so it's not an audit, which comes after the fact, right, after you've already paid your taxes. This is pre-clearance. This is the IRS deciding, are you going to be eligible for an affirmative credit? And they said yes. That's different. We would submit an audit. One of the examples we gave in briefing was, and this came up recently, the Fourth Circuit, not the estoppel, but . . . Border fencing on the southern border. Congress comes in and joins it. It would be surprising to me if the executive branch could then go, once they were enjoined, and say, hey, contractors who have hired employees and have bought equipment, you've got to give us all that money back, because Congress is inappropriate. Certainly, that's not what happened in actuality. It seems to me that those defense contractors would probably have a pretty good estoppel argument of, well, you gave it to us, and we hired people, and we bought equipment. Now we have to go, what do we do, go back and get it from our employees? I mean, but to your point, Your Honor, if Richmond is read as broadly as you're implying, that would have to be the outcome, right? They would have to go to those contractors who have given the money to their employees or bought equipment and say, hey, sorry, you've got to give us all that money back, because it wasn't appropriate. I guess I'm confused as to what you are asking this court to do. I hear you asking us to set contours that don't exist in this case. Why is that? Am I correct? You're talking about you want to know what the contours are about this rule and whether the government, if there is any intentional misrepresentation, but that's not this case. Put simply, I think what we're asking the court to do is to agree with the Second Circuit, which said equitable estoppel does not apply in the same way against the government as a private party, but there are judicially enforceable mechanisms for protecting the discretion of the IRS or something to that effect. And how, in this case, what would you have us say there are the judicial mechanisms? We would have, what we would submit is that the court should hold that and then remand it until the district court. This is not a court of first review. We're not asking for the court to decide if it's . . . But you have to have a hook. You're asking us to write an opinion that said there are hooks in certain circumstances. What's the hook in this case? So you're asking if we were asking the court to provide guidance to the district court on whether he should apply equitable estoppel in this case? You're saying you want to make sure the district court has said there is no judicial estoppel against the United States. You want us to say, hold on, there are in certain circumstances. What certain circumstances are there in this case that justify judicial estoppel? I understand what you're asking now. So we would say that the hook in this case is that the excise tax credit preclearance system is unique to the tax code. It's purposely designed so that you can get a registration so that then you invest in these alternative fuel processes during that time. It cannot be revoked, the registration, except respectively. And the purpose for that is so that you can be confident that while you have the registration, if you do invest heavily, you're not going to have the rug pulled out from under you. So in this very unique context of preclearance where a specialized group with agents of over 20 years experience in this particular context in a unique policy-inducing, this is Congress trying to substantively affect policy, right? This is an extremely unique area of the tax code. So tell me what, if we're writing an opinion, we agree with you, what's the rule here? The judicial estoppel against the government exists in this unique case because? If I were writing the opinion, I would say the district court incorrectly applied Richmond to absolutely foreclose application of equitable principles in all circumstances. That was an incorrect application of Richmond. There are at least some circumstances in which equitable principles can apply. We are not reaching the question of whether this is one such instance, but we note that because of the unique structure of the excise tax credit preclearance system and the experience of the IRS and all of that, district court should reach that outcome. This may be one of the circumstances. Are you arguing that once they do issue the registration and approve the status and pay the money, that's the end of it? No, your honor. Under what circumstances can the government get the money back? Certainly if the registration was because of mistake. Somebody made a mistake. A mistake was made in approving the registration and paying the money. So there's a mistake. Is your argument that the government has to suffer the mistake? In this case, we are suggesting that there's at least a tribal question. No. Under what grounds does the government not have to suffer the mistake? Well, certainly if it was the taxpayer's mistake, if the taxpayer represented facts that were correct. A government bureaucrat approved the arrangement and made a mistake, okay? And so I want to know under what circumstances can the government get the money back? I'll add one more fact. You've spent the money. It's been spent. Okay. Okay. Under what circumstances can the government get the money back? If it was the government's mistake. If the government's made a mistake and paid the money and want the money back, and your argument is saying no, a stop will apply. But all I want to know is under what circumstances can the government get the money back? If the reason why the registration was approved was because of the application was faulty, the taxpayer made a mistake, then certainly the government can realize that the taxpayer said something. The government made a mistake. Let's assume the taxpayer didn't do anything. The government just made a mistake. They didn't do what they should have done, the bureaucrats. Okay. Okay, and they made a mistake and the government paid the money. Under what circumstances can the government get the money back? Well, certainly I think if they realized their mistake quickly and there hadn't been detrimental reliance in some of the elements of the statute. Reliance is you got the money and spent it. Is that what you mean? You have to still have the money? Certainly, you have to. Well, if you don't have the money, then what are we even talking about here? If you still have the money, they can get it back. Is that it? Certainly under that circumstance. Okay. If you spent the money, they can't get it back. I guess just as a practical. Of course, the money is fungible. Correct. So it's all gone anyway. I see what you mean. I think the fact of the matter is equitable estoppel is always a very fact specific situation. I just want to know under what circumstances can the government get the money back? I think an easy example would be if they realized it was a week later. Even if you went out and partied in Vegas that night, I would find it difficult to believe that a judge could say that an equity error that was very quickly rectified, that it would be inequitable for the government to get their money back. It wouldn't be inequitable. I mean the question is, is it equitable or not? That's a factual question. Certainly there are situations in which it would be equitable for the government to get the money back. So it took too long in this case. That's your hook. It's a temporal issue. That's certainly one of them. What are the other ones? What are the other factors in this case? Very unique. This is the only part of the tax code in which the taxpayer is essentially relying on the expertise of the IRS and the specific context of preclearance. It's not an audit. It's not a retroactive audit. It's a preclearance in a technical area of the law in which you're relying on the expertise of the IRS. So we should hold that this particular tax credit deserves special treatment under the equitable estoppel process. Certainly a factor in the estoppel analysis. I've gone way over my time, so unless there's more questions, I apologize. You've reserved some time. Okay, thank you. Mr. Loewy. No, he's the rebuttal. Oh, he's the rebuttal. He's the rebuttal, Chuck. All right. He's the rebuttal. Okay. Mr. Johnshaw. Good morning. May it please the court, my name is Matthew Johnshaw, and I represent the appellee of the United States of America. This is a refund suit. It is not a suit to retain funds. The funds at issue have already been paid into the Treasury, and because the government did not counterclaim, the only thing at issue in this suit is whether taxpayers are entitled to a refund of the payments they made. And to put a finer point on that, whether the government can collect other amounts that taxpayers owe or whether taxpayers can retain other amounts they were erroneously paid are both questions that are not at issue. And I think once the focus is properly shifted back on the fact that this is only a refund suit for the payments that were made, the resolution of the case becomes much simpler. Do we have to answer the question of what would have happened if they hadn't paid it back and the government executed on their assets? I don't believe . . . It's not payment. I don't believe you have to answer that question, Your Honor, but I think that question . . . Or in the district court, that the government . . . If they didn't pay. Yes, or the government might someday bring a collection suit . . . Yeah, that's what I mean. And obtain a judgment. Yeah, Your Honor doesn't need to answer that because the government did not counterclaim in this case. But I think the answer is simple and straightforward. The government is entitled to a judgment for any excess payment received. 6206 explicitly makes them liable, but I think beyond 6206 . . . And leave the other part unanswered. The case may be determined on simply the fact that they paid, but the other part has also been answered. I think where the reply goes wrong is in sort of ignoring underlying principles. The government has an inherent right to collect any amounts erroneously, wrongfully, or illegally paid, and unless limited by statute, that right is indefinite. So here . . . All that you're barred by is a statute of limitations. That's right. Though there is some old Supreme Court case law that says that even for money paid into the Treasury, if it was due to the fraud of the government's agents, then that money can still be reclaimed. But they've only ever recognized a fraud exception, and that was a very long time ago, pre-Richmond. Richmond states broad, across-the-board rule, no equitable estoppel for monies because the Appropriations Clause requires that monies can only be paid out where they're authorized by an explicit statute. So you have to be able to point to a statute. And this Court's Walcott opinion applied Richmond in a case in which the government was suing and said that estoppel could not be asserted as a defense when the government was seeking to require public funds. So I think the Court's opinion in Walcott would directly answer your question as to the next case. Will the government be able to collect? The answer is yes. But here the government doesn't have to rely on any inherent right. Section 6206 makes taxpayers liable for the excess payments they receive. And taxpayers have twice waived any argument as to 6206. First, as the District Court recognized in its opinion, the taxpayers didn't respond to the government's 6206 argument in the District Court. And then again in their opening brief, taxpayers didn't mention 6206. So there really should be no dispute that 6206 explicitly imposes liability. And so then the question is simply, well, can this Court order refunds where, you know, taxpayers are not legally entitled to the funds? Taxpayers asked this Court to do that by vaguely asserting estoppel principles and asked the Court to order refunds anyway. But under Richmond and the Appropriations Clause, the Courts have no power to order a refund or any monetary remedy except as explicitly provided by statute. Seems unfair, though, doesn't it? Government tells you, well, you're entitled to the refund and then come back years later and say, oh, no, we made a mistake. You've got to give us the money back. Yes. Wouldn't it be better to conduct the audit before issuing the credit rather than after? Well, Your Honor, that's not the system that Congress set up. I think, in effect, taxpayers are making a moral claim. Richmond discusses that at some length, that if Congress wants to provide a remedy to them, Congress can. But the only way for them to be paid funds to which they're not currently entitled is to get a bill from Congress. It would actually be illegal for the government now to knowingly make payments that are unauthorized from the Treasury. And that's part of Richmond's argument as to why those sorts of claims are so novel. There's simply no statute authorizing these claims. So while the government's primary argument is about Richmond and the Appropriations Clause, before I continue on that track, I just want to ensure that it's not overlooked that the government has cited significant additional authorities that are similarly in favor of its position. So these include this Circuit's own case law interpreting Richmond, such as the Walcott and Shuford opinions, as well as this Court's own pre-Richmond estoppel against the government case law, the Harrison-Vanderoo line of cases, which are also relied on in Walcott. Under this Court's own pre-Richmond estoppel against the government case law, even showing the traditional estoppel factors is not enough to obtain estoppel against the government. The taxpayers would need to show multiple additional government-specific factors. First, that the government was acting in its private or proprietary capacity as opposed to its public or sovereign capacity. And second, that its agents were acting within the scope of their authority. But those two requirements suggest that estoppel could never apply in a case like this. In the context of tax cases, the government is always exercising its sovereign authority and acting in a sovereign capacity. And in a case such as this, when the IRS pays out money that's not authorized by any statute, it and its agents are necessarily acting beyond the scope of their authority by making erroneous and unauthorized payments. In addition, since Vanderoo and Walcott, this Court added another factor, which is a showing of affirmative misconduct. There was no affirmative misconduct in this case. There was perhaps a mistake, but no affirmative misconduct, no fraud. How do you distinguish the old Fifth Circuit case, Lansing's versus the Commissioner of Internal Revenue Service? Sure. They got it back there. They got their money back there, didn't they? They did. So let me start by saying that Lansing's was wrongly decided when it was decided. Lansing's relies on something called the IRS Statement of Procedural Rules. It's published in the CFR at 601201. But under this Fifth Circuit's prior published decisions, decisions predating Lansing's, the Fifth Circuit had recognized that 601201 was not actually a binding regulation. It was directory, not mandatory. It did not have the force and effect of law. So that was Lansing's original mistake. Second, Lansing's predates a number of the authorities that we cite. For instance, the Supreme Court's 1984 decision in Dickman that held the taxpayers' detrimental reliance arguments were unavailing. And then, of course, the 1990 decision in Richmond. We simply think that Lansing can't survive those other authorities. Taxpayers, in their reply brief, suggest that under the government's theory, the Constitution would require the IRS to claw back tax credit amounts that were paid in violation of the Appropriations Clause. But that's not actually true. That's not the government's theory. The government has never suggested that the Appropriations Clause requires clawbacks. Instead, the government has argued that the Appropriations Clause stops the courts from ordering any payment not authorized by statute. And that's the case here. These funds are back in the Treasury. They're suing for them. But there's no statute that would authorize their payment. And therefore, this court would violate the Appropriations Clause if it were to issue an order ordering their return. As for the registrations, Congress set up a framework in which there was some review prior to the issuance of registrations. But registrations are not a license to receive credits. They do not actually authorize the credits. And so there is an exam and audit framework. And the expectation is that if you claim excess credits, that you will be audited, examined, and that those credits can be taken back. And that's explicitly what 6206 does. So to apply the registration to stop that process would suggest that a regulation could trump a statute, which I think it simply can't. As to the 601-201 regulation itself, in the district court, taxpayers were arguing that the registrations were, in effect, determination letters. But they've waived that argument on appeal. So Lansing's would also no longer be directly applicable, Your Honor. I think that the government's arguments in this case have been repeatedly impugned as extreme or new or shocking. And I would just like to emphasize to the panel that the government does not view its positions as new or extreme and hopefully not shocking. The government is simply relying on background principles that sometimes go unacknowledged but nevertheless should be true in this case. More typically in a refund context, the requirement that you be relying on a specific statute is simply inherently met, right? So you're bringing a suit based on a part of the code and saying, under this code section, we're entitled to these funds. But taxpayers have a variant here where they're not relying on the code. They don't argue they're entitled to the tax credits they were paid. And they've stipulated they won't argue they're entitled to the tax credits they're paid. So they're, in effect, not relying on any code provision, any specific statute. And that's why Richmond and the Appropriations Clause is applicable. So without belabouring the point too much, I just wanted to emphasize what I think is also a very important part of Richmond, which is when Richmond holds that something like the judgment fund is not sufficient. Richmond explains that the general appropriation for payments of judgments in any event does not create an all-purpose fund for judicial disbursement. A law that identifies the source of funds is not to be confused with the conditions prescribed for their payment. Rather, the funds may be paid out only on the basis of a judgment, based on a substantive right to compensation, based on the express terms of a specific statute. And quite simply, taxpayers cannot meet that standard. They can't show an entitlement under the express terms of a specific statute. Unless this court has additional questions, I'll just briefly conclude. We'd ask that the district court's judgment be affirmed. Thank you. All right, thank you. John Choi? Mr. Lowy, you were going to make the rebuttal argument. Yes, Your Honor. Mr. Lowy, if you could start with how is it not illegal for the government to make payment now? Yes. So, Judge Branch, maybe this goes back to your original question to our side, and that is, why shouldn't this be considered a payment back that the IRS can now come back and just audit? You have to fully confront the Appropriations Clause issue here. The money rests with the government, and they're saying it is illegal for them to make payment at this point. How is it not? So maybe there are two issues implicit in here. One is the kind of payment 6206 issue, and the other is the Appropriations Clause OPM issue, and I appreciate they're intertwined. So maybe starting with 6406. Your argument that the government has to pay if the court says so. Yes, that is our position. That simple? And we believe that the court does have authority to, and here's why. So 6206, you know, it does allow the IRS to audit a taxpayer for excess payments. Most audits, though, are not in this context where you have a predetermination issued by the agency. In instances where you do have that, the way these audits are ordinarily conducted is the audit is more limited to whether or not the taxpayer complied with that determination. Are they doing things that are outside of the facts? Are they over-reporting their volumes when they didn't actually sell those volumes? So they do have a right to audit under 6206, but I'm going to submit to the court that it should be more limited in instances where you've got an excise tax credit where the IRS, the agency, has already made that determination. And this maybe ties into Judge Brant and Judge Toflat, you were both pushing for a standard. You know, what's the standard? And I think our position is... On what theory can they get the money back? Yeah, so we do not read OPM as an across-the-board... Under what theory can they get the money back? The government. So the government... Let's make a hypothetical case. You got the money and you spent it. Those are the facts. Under what theory can the government get the money back? In other words, get a judgment. Sure. Well, the IRS does have audit authority. In the many, many... In 99% of the cases... You're arguing a staple that they can't get the money back. All I want to know is... And that's equitable. It's so implicit. There's an argument on the other side. Yes. Once you invoke equity, you've got to do equity. So under what theory can we get the money back? I just want to know that. Yeah, I mean, any time when the government has not issued a determination already to a taxpayer, a private letter ruling... No, this hypothetical case is what happened in this case. Government says you can have the money. They paid the money. Under what theory can they have it back? They made a mistake. At the end of the day, they made a mistake. Right, well, I mean, it's our position that under the facts of our case, they can't get the money back, and the reason... They can't get it back. Cannot get it back. Because of what? Because of equitable... But I'll use, for lack of a better term, equitable principles. What is the principle? That you spent the money? So we've been reluctant to define the principle for the court... That you can't pay? Let's suppose you're impoverished. You can't pay. Is that a ground for not paying it back? So I would look more to the reasons why we distinguish the OPM case, where you've got an actual agency determination... Don't distinguish another case. Just tell me, under what theory can they have it back? Yeah, I think what I was trying to do is in articulating the standard, which I won't be able to... No, I just want to know the theory on which the government can get the money back. I'm helping you out. You've spent it. You're impoverished. Yeah. Okay. Under what theory can they get it back? They can't get it back. Okay. Why are you reluctant to give us the theory? You just said, we're reluctant to give you the theory. You still won't give us the theory. Well, I mean, we just haven't... We haven't defined... We didn't define the theory in our briefs. You know, we did... I think we articulated for the court, you know, the distinctions with OPM, those are the types of factors that I think the court should consider in fashioning maybe a standard that will narrowly apply Is your theory that the government made a mistake, they can't get it back? I mean, that seems to be what you're advancing. Not in all cases. So this is... The agency issued a determination. The taxpayer relied on that determination. Those are the types of factors. Sure, they got the money. What is that? And you got the money. They got the money. They spent it, and this was an incentive tax credit. They spent it for the purpose that it was intended for. They did produce an alternative fuel. It was just a question of, did they sell it directly to the end user or not sell it directly to the end user? At one point, they didn't interpret the law to require a sale to the end user. Now they do. You're resisting this statement that your theory appears to be the government can't have it back because it made a mistake. I think the court can fashion a narrower holding. So it's the government made a mistake as to your client. So this isn't a lower-level employee with the government that made a mistake. This is the agency making a mistake in writing to a taxpayer. Taxpayer relied on that mistake. And this may also be specifically circumscribed to the tax area and the unique relationship the IRS has to taxpayers. You know, at the end of the day, and I realize I'm past my time, I mean, this does remind me a bit of Lucy from Charlie Brown pulling away the football. And, I mean, our position is that the court should expect more from the IRS than maybe we all do of Lucy. All right, thank you, Mr. Lowy. Thank you.